■ SUSAN M. FALLICA, Respondent, v JAMES MANZOLILLO et al., Appellants. [619 NYS2d 409] —Yesawich Jr., J. Appeals (1) from an order of the Supreme Court (Williams, J.), entered September 14, 1993 in Sullivan County, upon a decision of the court in favor of plaintiff, and (2) from the judgment entered thereon.

In June 1988, plaintiff entered into an agreement with defendants James Manzolillo and Memory Lane of Cochecton, Inc. (hereinafter Memory Lane) whereby she agreed to manage a bar and restaurant owned by Memory Lane, situated on real property owned by defendant Jawil Acres, Inc., for compensation of $300 per week and the use of an apartment on the premises. At the time, Manzolillo, along with his associate, William Ingrassia, owned all of the shares of both Memory Lane and Jawil, and it was anticipated that Manzolillo would buy out Ingrassia's interest in both corporations and that plaintiff would eventually purchase the business from Manzolillo. In August 1988, plaintiff and Manzolillo entered into an agreement for the sale of the bar building and four acres of the surrounding land, along with all of the shares of Memory Lane. Consummation of the sale was contingent upon plaintiff obtaining a mortgage loan in the amount of $100,000, and also on her diligent pursuit of a liquor license. Upon signing the contract of sale, plaintiff gave Manzolillo a deposit of $9,000 against the purchase price, which he then used to purchase Ingrassia's interest in Memory Lane and Jawil.

For over a year, while she attempted to obtain the required financing, plaintiff continued to manage the business and took steps to increase its profitability. Despite these efforts, the bar

and restaurant did not generate sufficient income to pay plaintiff the $300 weekly salary called for in the management agreement, nor to meet its other expenses, and plaintiff found it necessary to invest over $50,000 of her own funds in the business to keep it afloat. Defendants attempted to schedule a closing on October 2, 1989, but when they were informed that plaintiff had not yet obtained financing, they responded by advising that if no agreement was reached by October 30, 1989, the sale contract would be voided and plaintiff's down payment returned. Plaintiff agreed and, in addition, indicated her willingness to terminate the management agreement, upon return of the amount she had contributed to the business. At this point, however, defendants apparently had a change of heart, and on November 3, 1989 they notified plaintiff that if the closing was not scheduled within 30 days, the down payment would be forfeited and the liquor license removed from the premises. Negotiations broke down, and on November 16, 1989 Manzolillo removed the liquor license and turned off the electric and telephone service to the bar and restaurant, rendering continued operation of the business impossible.

Defendants' steadfast refusal to return to plaintiff any of the funds she had advanced prompted her to bring this action, in which she seeks, *inter alia,* to have an equitable lien imposed upon the real property in the amount of $55,000. While the suit was pending, Manzolillo apparently dissolved both corporations, sold the bar and restaurant as well as 12 acres of the surrounding real property to a third party, and entered into a contract of sale for the rest of the land formerly owned by Jawil.

A bench trial was held. Defendants appeal from the resulting order and judgment entered thereon, which awarded plaintiff an equitable lien in the amount of $50,066.63 against the premises, a vendee's lien of $9,000 and a money judgment against defendants for the same amounts.

An equitable lien may be granted in favor of a person who, due to the nature of his or her relationship with a property owner, has relied upon that owner's unfulfilled promise to convey the property, and as a result has expended funds to preserve or improve it in anticipation of the conveyance *(see, Johnston v Martin,* 183 AD2d 1019, 1020; *see also,* 75 NY Jur 2d, Liens, § 20, at 69-70). Here, the record does not support an award of this type, for there is simply no evidence that plaintiff and Manzolillo were close friends or, in fact, anything more than mere acquaintances *(see, Prado v De Latorre,* 194

AD2d 656, 657, *lv denied* 82 NY2d 661; *Bontecou v Goldman,*
103 AD2d 732, 733; *compare, Sharp v Kosmalski,* 40 NY2d
119, 120-121; *Johnston v Martin, supra; Hornett v Leather,* 145
AD2d 814, *lv denied* 74 NY2d 603).

Furthermore, plaintiff has neither alleged nor proven that
Manzolillo promised to transfer the premises to her other
than in accordance with the terms of the sales contract, which
was expressly conditioned on plaintiff obtaining a financing
commitment. Given that she was unable to secure financing,
and Manzolillo had the right, in that event, to unilaterally
terminate the contract, plaintiff had no reasonable expecta-
tion of future ownership that might form the basis for an
equitable lien *(see, Lester v Zimmer,* 197 AD2d 783, 784;
*Scivoletti v Marsala,* 97 AD2d 401, 402-403, *affd* 61 NY2d 806).

Nevertheless, Supreme Court found, and we agree, that
plaintiff made a good-faith attempt to acquire financing. Fur-
ther, we are not favorably disposed to defendants' contention
that her failure to apply for a liquor license constitutes a
default and precludes imposition of a vendee's lien in her
favor, for defendants, by acquiescing in plaintiff's delay,
waived their right to demand strict compliance with that
condition. In view of the foregoing and the fact that the sales
contract expressly provides that "[a]ll money paid on account
of [the] contract" is to constitute a lien on the premises,
plaintiff is entitled to such a lien, to the extent that she has
advanced a portion of the consideration that was to be paid
under the contract.* This plainly includes the $9,000 down
payment; moreover, the contract provides that plaintiff is to
be given a credit toward the purchase price for any mortgage
payments made prior to the closing. Although plaintiff techni-
cally made advances to Memory Lane, and there was testi-
mony that Memory Lane actually had a lease from Jawil and
consequently recorded only "rent" payments on its books,
inasmuch as the parties consistently referred to these expendi-
tures as mortgage payments, and they were apparently uti-
lized to meet Jawil's mortgage loan obligation, they should be
treated as such. In view of the aforementioned contract provi-
sion, which evidences the parties' intent that plaintiff receive
credit for funds she advanced that ultimately went toward the
mortgage, these amounts are also properly within the scope of

---

* While defendants argue that Supreme Court's decision encompasses an
implied denial of plaintiff's motion to conform the pleadings to the proof, on
which no express ruling was made, we disagree, for the court apparently—
and correctly, in our view—permitted amendment to the extent that the
proof demonstrated plaintiff's right to a vendee's lien.

the vendee's lien created by the contract. Because the record does not contain information as to the amount of "rent" paid during plaintiff's tenure as manager of the bar and restaurant, the matter must be remitted so that Supreme Court may take further testimony on this issue.

Finally, defendants rightly assert that Supreme Court erred in granting a money judgment against Memory Lane on the basis of either an equitable lien or a vendee's lien, for that corporation was neither the owner of the property, the owner's agent nor the seller, nor did it stand to benefit in any way from the sale of the property. Significantly, plaintiff did not allege a cause of action against Memory Lane sounding in breach of contract or any other theory upon which such recovery might be founded, and in view of the court's previous indication that it would not consider such a claim, plaintiff's motion to conform the pleadings to the proof was properly denied insofar as it sought to add the same. Accordingly, the order and judgment should be reversed insofar as they have been entered against Memory Lane.

As for Manzolillo and Jawil, the entry of an order and judgment in the amount of the vendee's lien was not improper, for Jawil was the owner of the property, and Manzolillo held himself out as the owner by entering into a contract to sell the property, appropriated the down payment for his own purposes and apparently stood to benefit from any sale of the premises. Insofar as the award was based on damages that were not properly the subject of a vendee's lien—such as for the recovery of funds advanced to Memory Lane for the operation of the business itself, rather than for payment of the mortgage—it was improperly entered against Manzolillo and Jawil, neither of whom bear any responsibility under the management agreement for the reimbursement of such amounts. Once the amount of the vendee's lien has been determined, then the order and judgment against these two defendants must be reduced accordingly.

Mikoll, J. P., Mercure, Crew III and White, JJ., concur. Ordered that the order and judgment are modified, on the law, without costs, by reversing so much thereof as awarded plaintiff an equitable lien, a vendee's lien and money judgments against defendants; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.